

# NUMBER 13-12-00406-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

ARNOLD CARRIZALES,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

---

## On appeal from the County Court
## of Bee County, Texas.

---

# OPINION

## Before Chief Justice Valdez and Justices Rodriguez and Longoria
## Opinion by Justice Rodriguez

Appellant Arnold Carrizales challenges his conviction for class B misdemeanor criminal mischief. *See* TEX. PENAL CODE ANN. § 28.03(a)(1), (b)(2) (West 2011). By two issues, Carrizales argues the evidence was insufficient to establish (1) that the alleged

offense was committed, i.e., the corpus delicti of the offense, or (2) Carrizales's identity as the person who committed the offense. We affirm.

## I. Background

Carrizales was charged by information with committing criminal mischief for damaging the vehicle of Ramona Gomez "by throwing screws and nails into the road causing flat tires." Carrizales pleaded not guilty, and his case was tried to the bench.

At trial, Gomez testified that she and her family live on a private road that connects to a county road that then connects to state highway 181 outside of Beeville, Texas. Gomez testified that there was an oil well at the end of their private road and that eighteen-wheelers often drove past their home on the way to the well. Gomez testified that, to drive to work in the mornings, both she and her husband travel first on their private road then turn on the county road, which they then travel on to highway 181. Gomez testified that Carrizales is her cousin. Carrizales lives on the county road in between the Gomezes' home and highway 181, and both Gomez and her husband drive by Carrizales's home every day on their way to and from work.

In the past, Carrizales expressed concern to Gomez over the speed at which she and her husband drive on the county road. Gomez testified that at some point, Carrizales had placed logs in the roadway adjacent to his home to force Gomez and her husband to drive slower. In late 2009 and early 2010, Gomez and her husband began having flat tires on their vehicles. When they repaired their vehicles, they discovered the same type of roofing, or sheet metal, screws in the tires on both of their vehicles. Gomez testified that neither she nor her husband had trouble with screws in their tires before this

2

point. Gomez testified that she believed Carrizales threw the screws in the roadway and filed a complaint with the sheriff's department to that effect. On cross-examination, Gomez testified that she never saw Carrizales throwing screws in the roadway.

Next, Steve Linam with the Bee County Sheriff's department testified that he investigated Gomez's complaint. Linam testified that he recovered the screws that had caused the flat tires on Gomez's vehicle. Linam also testified that an officer who had gone out in a patrol car to Carrizales's home to investigate returned with flat tires and that the screws found in the patrol car's tires were the same type of sheet metal screws Gomez found in her tires. Linam testified that the first time he called Carrizales to interview him about the complaint, Carrizales denied throwing screws in the road. The second time he interviewed him, Carrizales became upset and threatened to report Linam to his supervisor.

On cross-examination, Linam testified that he did not search Carrizales's property for the type of screws discovered in the tires. Linam also testified that he did not discover any screws in the roadway near Carrizales's home.

Carrizales then testified on his own behalf. He admitted putting the logs in the roadway, but denied throwing screws onto the roadway. Carrizales confirmed the oil well traffic that Gomez mentioned in her testimony.[1] On cross-examination by the State, Carrizales admitted that the logs he placed in the roadway did not slow the Gomezes down.

After argument by the State and the defense, the trial court found Carrizales guilty

---

[1] The defense also called Jimmy Alaniz, an investigator with the public defender's office, who testified that there was an operating gas well at the end of the Gomezes' private road.

of the charged offense. The court sentenced Carrizales to thirty days in county jail, suspended for one year on the condition that Carrizales pay $166.58 in restitution, have no contact with Gomez, and commit no other offenses. This appeal followed.[2]

## II. Standard of Review and Applicable Law

In a sufficiency review, courts examine the evidence in the light most favorable to the verdict to determine whether "any rational fact finder could have found guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); s*ee Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This standard requires reviewing courts to resolve any evidentiary inconsistencies in favor of the judgment, keeping in mind that the fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899. Appellate courts do not reevaluate the weight and credibility of the evidence; they only ensure that the fact finder reached a rational decision. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A fact finder may support its verdict with reasonable inferences drawn from the evidence, and it is up to the fact finder to decide which inference is most reasonable. *Id.* at 523. Further, when the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

Legal sufficiency is measured by the elements of the offense as defined by a

---

[2] The State has not filed an appellate brief in response to Carrizales's contentions. *See Siverand v. State*, 89 S.W.3d 216, 219 (Tex. App.—Corpus Christi 2002, no pet.) ("The Texas Rules of Appellate Procedure require appellant to either file a brief or state that he no longer desires to prosecute the appeal. TEX. R. APP. P. 38.8(b). However, there is no corresponding rule requiring the State to file a brief in response to appellant's brief.").

hypothetically correct jury charge.[3] *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* As authorized by the information in this case, a person commits criminal mischief if "without the effective consent of the owner[,] . . . he intentionally or knowingly damages or destroys the tangible property of the owner" and "the amount of pecuniary loss is $50 or more but less than $500." TEX. PENAL CODE ANN. § 28.03(a)(1), (b)(2).

It is not necessary that the evidence directly proves the defendant's guilt; "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). A defendant's intent, in particular, may be inferred from his words, acts, and conduct. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). In other words, intent and knowledge are fact questions and are almost always proven through evidence of the circumstances surrounding the crime. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). Finally, we note that both the identity of the accused and the corpus delicti of an offense may be proven by circumstantial evidence. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *see also Wheeler v. State*, 35 S.W.3d 126, 134 (Tex. App.—Texarkana 2000, pet. ref'd); *Clark v. State*, No.

---

[3] This standard applies to evidence presented in a bench trial as well as to cases tried to a jury. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

13–10–00496–CR, 2011 WL 3821055, at *4 (Tex. App.—Corpus Christi Aug. 25, 2011, no pet.) (mem. op., not designated for publication).

### III. Corpus Delicti

By his first issue, Carrizales argues that the evidence was insufficient to prove that the crime of criminal mischief actually occurred in this case. Carrizales argues that the State presented no evidence that any person placed screws in the road intentionally to damage Gomez's tires.

In general, "[t]he corpus delicti of a crime—any crime—simply consists of the fact that the crime in question has been committed by someone." *Fisher v. State*, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993) (citations omitted). We have found no case law regarding corpus delicti in the context of criminal mischief, specifically. Carrizales urges the Court to consider the corpus delicti jurisprudence developed in arson cases in order to determine what the State must prove to establish the corpus delicti of criminal mischief. We agree with Carrizales that the arson corpus deliciti cases are instructive.

In both arson and criminal mischief cases, the State must prove that a person acted intentionally, knowingly, or recklessly to destroy or damage property. *Compare* TEX. PENAL CODE ANN. § 28.02 (West 2011), *with id.* § 28.03(a). Specifically, courts have held that the corpus delicti of arson is the willful burning of property; proof that the property merely burned is insufficient. *See Wheeler*, 35 S.W.3d at 134–35; *see also Orr v. State*, 306 S.W.3d 380, 394 (Tex. App.—Fort Worth 2010, no pet.) ("'To establish the corpus delicti in arson cases[,] it is necessary to show that a fire occurred and that the fire was designedly set by someone.'" (quoting *Mosher v. State*, 901 S.W.2d 547, 549 (Tex.

6

App.—El Paso 1995, no pet.), citing *Troncosa v. State*, 670 S.W.2d 671, 680 (Tex. App.—San Antonio 1984, no pet.)). Similarly, in criminal mischief cases, proof that property has merely been damaged or destroyed is not enough; rather, to establish the corpus delicti of criminal mischief, the State must show that the destruction or damage occurred and that the destruction or damage was intentionally or knowingly caused by a person. *See* TEX. PENAL CODE ANN. § 28.03(a). Here, as posited by Carrizales, that means the State was required to prove that "the screws ended up in [Gomez's] tires due to a person's intentional [or knowing] act."

With the foregoing established, we now turn to the evidence in this case. Carrizales argues that there was no direct evidence that he placed the screws in the roadway. He points to testimony that no screws were found in the roadway and that no one saw him place any screws in the roadway. Carrizales argues that the evidence at trial regarding the screws in the Gomezes' tires was as consistent with accident as it was with criminality. We disagree.

As asserted by Carrizales, it is true that there was no direct evidence that Carrizales placed the screws in the road. But there was sufficient circumstantial evidence that he committed the offense. Carrizales admitted that he had had a conflict with the Gomezes in the past over the speed at which they drove past his house on the county road. He even admitted that he had placed logs in the roadway in an attempt to slow them down, but that the logs had not curbed the Gomezes' speeding. There was evidence that the Gomezes had never had trouble with screws in their tires until the dispute arose with Carrizales. Finally, the patrol car that had gone to Carrizales's home

7

to take the initial report ended up with flat tires caused by the same type of sheet metal screws that caused the flat tires in the Gomezes's vehicles. Although there was testimony that supported an inference that the Gomezes could have picked up screws in their tires elsewhere—from screws dropped by the oil well vehicles or from elsewhere in their drives to and from work—it was within the purview of the trial court to resolve this conflicting evidence, and we presume that the court did so in favor of the verdict. *See Merritt*, 368 S.W.3d at 525–26.

We conclude that the foregoing circumstantial evidence shows that Carrizales intentionally placed the screws in the roadway to damage the Gomezes' tires. It was reasonable for the fact finder to infer from Carrizales's words and actions that he had a motive to damage the Gomezes' tires. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (holding that motive is circumstantial evidence of intent); *see also Patrick*, 906 S.W.2d at 487. The evidence of motive combined with the physical evidence, i.e., that the same type of screws were recovered from both the Gomezes' vehicles and the patrol car, allowed a rational fact finder in this case to conclude that the State had established the corpus delicti of criminal mischief. *See Wheeler*, 35 S.W.3d at 134; *see also Clark*, 2011 WL 3821055, at *4. In other words, the evidence was sufficient to support the trial court's conclusion that the destruction and damage to the Gomezes' tires were intentionally caused by Carrizales. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895. We overrule Carrizales's first issue.

## IV. Identity

By his second issue, Carrizales argues that the evidence was insufficient to

8

establish Carrizales's identity as the person who committed the offense. Carrizales argues that the evidence established only his motive and opportunity to commit the offense and that evidence of motive and opportunity alone are, as a matter of law, insufficient to prove identity. *See Merritt*, 368 S.W.3d at 526. Again, we disagree.

The same evidence that circumstantially established the corpus delicti of the offense also circumstantially established Carrizales's identity. *See Earls*, 707 S.W.2d at 85. We note that Carrizales appears to concede that the evidence establishes that he had the motive and opportunity to commit the offense; he was unhappy with the speed at which the Gomezes were driving on the road outside his home (motive), and he lived near the Gomezes (opportunity). The evidence of motive and opportunity, while not sufficient alone, are nonetheless circumstances linking Carrizales to the crime. *See Merritt*, 368 S.W.3d at 526 (holding that even though motive and opportunity are not sufficient to prove identity, they are circumstances indicative of guilt); *see also Temple v. State*, No. PD–0888–11, 2012 WL 6861531, at *19 (Tex. Crim. App. Jan. 16, 2013) (same). But the motive and circumstance evidence is not the only evidence of identity in this case. At trial, Carrizales admitted that he had placed objects in the road on a prior occasion in an attempt to slow the Gomezes speeding. Also, the patrol car that went to Carrizales's home to investigate Gomez's complaint returned with a flat tire caused by the same type of sheet metal screws that caused the Gomezes' flat tires. Both of the foregoing are strong circumstantial evidence corroborating the motive and opportunity evidence and circumstantially identifying Carrizales as the perpetrator of the charged offense. *See Hooper*, 214 S.W.3d at 13; *see also Kuciemba*, 310 S.W.3d at 462; *Earls*, 707 S.W.2d at

9

85. In short, we are not persuaded by Carrizales's assertions that the only evidence of identity was the evidence related to motive and opportunity.

It was within the prerogative of the fact finder in this case to weigh the evidence before it, and having reviewed the entire record, we cannot conclude that the trial court acted irrationally in determining beyond a reasonable doubt that Carrizales was the person who threw the screws in the roadway. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895; *Laster*, 275 S.W.3d at 517. We overrule Carrizales's second issue.

## V. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 21st
day of February, 2013.

10